UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


KEVIN KEITH,                            )        Case No.: 1:18 CV 634
                                        )
        Petitioner                      )        JUDGE SOLOMON OLIVER, JR.
                                        )
        v.                              )
                                        )
LYNEAL WAINWRIGHT, Warden,              )
                                        )
        Respondent                      )        <u>ORDER</u>


        Currently pending before the court in the above-captioned case is Petitioner Kevin Keith's

("Petitioner" or "Keith") Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2254

(ECF No. 1). Also before the court are the parties' respective Objections (ECF Nos. 42, 44) to the

Magistrate Judge's decision to partially expand the record, Keith's Second Motion to Expand the

Record (ECF No. 59), and his Motion for Oral Argument on the Habeas Petition (ECF No. 65).

Under Local Rule 72.2, the court referred the Petition to the Magistrate Judge for a Report and

Recommendation ("R & R"). For the following reasons, the court overrules the parties' Objections

to the ruling on Keith's First Motion to Expand the Record, the court grants Keith's Second Motion

to Expand the Record, the court adopts the R & R as modified by this Order and dismisses the

Petition, and the court denies Keith's Motion for Oral Argument.

**I.  BACKGROUND**

        In May 1994, an Ohio jury convicted Keith on three counts of aggravated murder and three

counts of attempted aggravated murder.[1] The trial court sentenced Keith to death, per the jury's recommendation, and the Ohio Court of Appeals and Ohio Supreme Court affirmed his convictions and sentence on appeal. Since then, Keith has actively pursued post-conviction relief in state and federal court as well as Ohio's clemency proceedings. Although all of Keith's prior efforts through the courts were unsuccessful, in September 2010, then-Governor Ted Strickland commuted Keith's sentence to life in prison without the possibility of parole.

Keith's three prior federal habeas petitions were unsuccessful.[2] In 1999, Keith filed his first petition asserting ineffective assistance of counsel. The district court denied the petition, and the Sixth Circuit affirmed. *Keith v. Mitchell*, 455 F.3d 662, 665 (6th Cir. 2006). Keith filed a second petition in 2008, citing newly discovered evidence that the state allegedly suppressed in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). But a divided panel of the Sixth Circuit held that Keith could not pursue his claims because he failed to satisfy the threshold requirements for filing a second or successive habeas petition under 28 U.S.C. § 2244(b)(2). *See Keith v. Bobby*, 551 F.3d 555, 556 (6th Cir. 2009); *Id.* at 561 (Clay, J., dissenting). The Sixth Circuit likewise denied Keith's 2013 petition, which raised additional ineffective assistance of counsel claims, for the same reason. *See In re Keith*, No. 14-3290 (6th Cir. Dec. 8, 2014) (order).

In this fourth-in-time Petition, Keith asserts two new *Brady* violations: First, Keith argues that the state withheld impeachment information regarding Michelle Yezzo ("Yezzo"), a former forensic analyst for the Ohio Bureau of Criminal Investigation, whose testimony linked Keith to the

---

[1] The court adopts the R & R's detailed and accurate discussion of the factual and procedural background underlying Keith's case. In light of that discussion, plus the extensive record from the trial court, direct appeal, and prior post-conviction proceedings, only a short summary of the relevant facts is needed here.

[2] *See* Case Nos. 1:99-CV-657; 1:08-CV-1687; 1:13-CV-1718. Early filings related to the 1999 petition predate electronic filing.

crime. Second, Keith contends that the state deliberately ignored his trial subpoena requesting police phone log records that would have contradicted the government's theory of the case and undermined the credibility of its star witness. As with Keith's prior requests for federal habeas relief, the court transferred this matter to the Sixth Circuit to determine whether Keith could file a successive habeas petition. (*See* Order, ECF No. 15.) But unlike those prior unsuccessful attempts, the Sixth Circuit granted Keith's request after determining that he had made a *prima facie* showing to satisfy § 2244's gateway requirements and, therefore, that his "*Brady* claims 'warrant a fuller exploration in the district court.'" *In re Keith*, No. 18-3544, 2018 WL 8807240, at *7 (6th Cir. Oct. 26, 2018) (quoting *In re Wogenstahl*, 902 F.3d 621, 629 (6th Cir. 2018)).

The proceedings continued in this court after the Sixth Circuit's order authorizing Keith to pursue his successive Petition. The State filed its Return of Writ (ECF No. 26) on March 26, 2019, and Keith filed a Traverse (ECF No. 28) on May 9, 2019. With his Traverse, Keith also moved the court to include nine additional exhibits in the record. (First Mot. to Expand, ECF No. 29.) The Magistrate Judge granted that Motion as to three exhibits but denied it as to the other six. (Order, ECF No. 41.) Both parties objected to the ruling. (ECF Nos. 42, 44.) On September 3, 2020, the Magistrate Judge submitted the R & R (ECF No. 56),  recommending that the court dismiss Keith's Petition. Keith filed an Objection (ECF No. 58) and a Second Motion to Expand the Record (ECF No. 59) on September 24, 2020.[3] While Respondent Warden Lyneal Wainwright ("Respondent") did not file an objection, her Response (ECF No. 60) to Keith's Objection purports to challenge some aspects of the R & R. (*See id.* at PageID # 11738 n.2.) On March 3, 2021, Keith filed a Motion for Oral Argument (ECF No. 65).

---

[3]     Ordinarily, Keith should have raised this Motion with the Magistrate Judge. However, because Respondent does not object to it as untimely, the court considers it in its analysis.

## II.  LAW AND ANALYSIS

**A.**    **Legal Standards**

1.  Expanding the Record

Habeas Rule 7 allows federal habeas courts to "direct the parties to expand the record by submitting additional materials relating to the petition." But the decision whether to expand "is left to the discretion of the trial judge." *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988). Expansion is not mandatory. *Id.*

2.  Second or Successive Habeas Petitions

Second or successive habeas petitions like Keith's are governed by 28 U.S.C. § 2244(b)(2)(B). The relevant provisions state:

> (2)    A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> (B)(i)    the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii)    the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2)(B). The second prong is commonly referred to as the "actual innocence" standard. Before a second or successive petitioner can proceed on their claims in the district court, they must obtain authorization from the court of appeals by making a *prima facie* showing that they satisfy § 2244(b)(2)(B)'s requirements. 28 U.S.C. § 2244(b)(3)(C); *In re Wogenstahl*, 902 F.3d at 628. In this context, "*prima facie*" simply means "sufficient allegations of fact together with some documentation that would warrant a fuller exploration in the district court." *In re Wogenstahl*, 902

-4-

F.3d at 628 (quoting *In re Lott*, 366 F.3d 431, 433 (6th Cir.2004)). Once back in the district court, the petitioner "must actually show that the claim satisfies the standard" to avoid dismissal. *Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001) (cleaned up).

**B.     Objections to First Motion to Expand the Record**

When he filed his Traverse, Keith also sought to expand the record to include the following nine exhibits:

1.  Sentencing entries for defendants caught in a drug raid that also implicated Keith. (ECF No. 28-1.) Keith asserts that, although he was never tried for these drug offenses, "the sentencing outcome of the others charged demonstrates that" he likely would have faced a relatively short sentence. (First Mot. to Expand Record at PageID #10908 n.3, ECF No. 28.)

2.  February 13, 1994, Mansfield police department traffic report that corroborated statements from one of Keith's girlfriends, Melanie Davison ("Davison"). (ECF No. 28-2.) Keith claims that this report in turn corroborates his alibi.

3.  A copy of a search warrant affidavit that includes "masks" in the list of items to be searched. (ECF Nos. 28-3; 33-2.) Keith argues that the affidavit shows "police apparently still believed that the shooter had been masked." (First Mot. to Expand Record at PageID #10911 n.8, ECF No. 28.)

4.  May 9, 2019, corrected affidavit of Keith's counsel meant to demonstrate diligence under § 2244(b)(2)(B)(i). (ECF No. 29-1.)

5.  May 6, 2019, affidavit of former Governor Ted Strickland stating that he commuted Keith's sentence due to "severe doubts about his guilt." (Strickland Aff. ¶ 5, ECF No. 28-5.)

6.  State of Ohio's January 10, 2013, brief in opposition to Keith's petition for a writ of certiorari from the United States Supreme Court. (ECF No. 28-6.)

7.  April 23, 2019, expert report from Sunita Sah ("Sah") regarding the biases in and unreliability of Michele Yezzo's forensic analysis. (ECF No. 28-7.)

8.      May 1, 2019, affidavit of Zachary Swisher, deputy legal counsel
        to former Governor Strickland, stating that he has "grave
        concerns about the investigation and Keith's guilt." (Swisher Aff.
        ¶ 11, ECF No. 28-8.)

9.      September 24, 2010, statement under oath of Davison explaining
        why she changed the tires on the car Keith purportedly used as
        his getaway vehicle. (ECF No. 28-9.)

The Magistrate Judge granted this Motion as to the affidavit from Keith's counsel and Sah's expert report, finding the former relevant to Keith's diligence and the latter relevant to Keith's claim of actual innocence. (Order at PageID #11401–03, ECF No. 41.) The Magistrate Judge also granted the Motion as to the State's brief in opposition to Keith's petition for certiorari because Respondent did not oppose its inclusion in the record. (*Id.* at PageID #11402.) However, the Magistrate Judge denied the Motion as to the other exhibits, finding that they were not relevant to the inquiry under 28 U.S.C. § 2244(b)(2)(B). Both parties objected to the Magistrate Judge's ruling.

1.  Standard of Review

When reviewing a Magistrate Judge's ruling on a nondispositive issue, the court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "clearly erroneous" standard applies to the Magistrate Judge's factual findings, while the "contrary to law" standard applies to legal conclusions. *Reid v. Moore*, No. 3:05-CV-326, 2009 WL 3857429, at *1 (S.D. Ohio Nov. 16, 2009). Both standards afford considerable deference to the Magistrate Judge's determinations. *Id.*

2.  Respondent's Objection

Respondent objects to the inclusion of the updated affidavit from Keith's counsel (ECF No. 29-1) and Sah's expert report (ECF No. 28-7). (*See* Resp.'s Obj. to Mag. J. Order at PageID #11407–08, ECF No. 42.) First, citing *Cullen v. Pinholster*, 563 U.S. 170 (2011), Respondent asserts that, "in a case in which there was a merits determination in state court . . . , the

Court cannot consider any evidence which was not before the state courts." (Resp.'s Obj. to Mag. J. Order at PageID #11408–09, ECF No. 42.) Second, Respondent argues that even if Keith's exhibits overcome *Pinholster*'s bar, the affidavit and expert must be excluded because they are irrelevant to the merits of Keith's habeas claims.

These arguments are not well-taken. As to the first, the Magistrate Judge correctly distinguished *Pinholster* from this case. While *Pinholster* requires federal habeas courts to limit their § 2254(d)(1) merits analysis to the record before the state court, that limitation "is inapplicable to the threshold jurisdictional questions before the Court in § 2244(b)(1)(B)." (Order at PageID #11397, ECF No. 41.) Indeed, Respondent's Objection acknowledges precisely this distinction. (Resp.'s Obj. to Mag. J. Order at PageID #11408, ECF No. 42 (suggesting that *Pinholster*'s bar does not apply to the affidavit from Keith's counsel because "that document does address the § 2244 gate-keeping requirements").) After reviewing the parties' arguments and the Magistrate Judge's Order—as well as decisions from other courts in this circuit that have expanded the record to include new evidence for purposes of the § 2244(b)(1)(B) inquiry, (*see* Order at PageID #11397, ECF No. 41)—the court finds that the Magistrate Judge's interpretation and application of *Pinholster* is not clearly erroneous. Nor did the Magistrate err in finding the affidavit and expert report relevant to the threshold inquiry. The Magistrate Judge accurately concluded that these materials inform the analysis under § 2244(b)(1)(B), and the Order properly explained that the exhibits were admitted only for that purpose. (Order at PageID #11402–03, ECF No. 41.) Consequently, the court overrules Respondent's Objection.

### 3.  Keith's Objection

Keith objects to the exclusion of four exhibits: the Mansfield police traffic report (ECF No. 28-2), the search warrant (ECF Nos. 28-3, 33-2), the Strickland and Swisher affidavits (ECF

Nos. 28-5, 28-8), and the Davison statement (ECF No. 28-9). (*See* Keith's Obj. to Mag. J. Order at PageID #11421, ECF No. 44.) The crux of Keith's Objection relative to each exhibit is that the Magistrate Judge improperly evaluated their relevance to the § 2244(b)(1)(B) inquiry.

The court also finds these arguments not well-taken. Both of the Davison exhibits, the police report and her sworn statement, potentially provide some support for Keith's defense theory and therefore potentially have some relevance to the § 2244(b)(1)(B)(ii) actual innocence prong. But Keith vastly overstates their significance, and the court cannot find that the Magistrate Judge clearly erred by excluding them. As for the affidavits, they come from third parties, who merely recount their personal views about Keith's case despite lacking direct knowledge of Keith's diligence or innocence. The court does not doubt the sincerity of the affiants' concerns, but the court ultimately agrees with the Magistrate Judge that the affidavits are not relevant to the § 2244(b)(1)(B) inquiry. Consequently, the court overrules Keith's Objection.[4]

**C.      Second Motion to Expand the Record**

Before turning to the R & R and the substance of Keith's Petition, the court first addresses his Second Motion to Expand the Record. With this Motion, which he filed along with his Objection to the R & R, Keith seeks to add the following exhibits:

> 1.    Mansfield police department file concerning Melton's prior murder (ECF No. 59-1), which, according to Keith, "demonstrates the State's decades-long knowledge that Melton 'is highly dangerous and possibly mentally disturbed.'" (Second Mot. to Expand at PageID #11674, ECF No. 59.)

> 2.    September 24, 2020, affidavit of Lori Rothschild Ansaldi, a televison and podcast producer who obtained the Melton police file through a public records request and then forwarded them to Keith's former counsel. (Ansaldi Aff. ¶¶ 6–9, ECF No. 59-2.)

---

[4]      In any event, for the reasons discussed below, the court still would dismiss Keith's Petition even if all of these exhibits were included in the record.

Respondent opposes this Motion, again arguing that *Pinholster* bars the court from considering materials outside the state court record and that, in any event, the materials are irrelevant. (Resp.'s Opp'n to Second Mot. to Expand at PageID #11792–95, ECF No. 62.)

The court finds Petitioner's Motion to be well-taken. As discussed above, the court rejects Respondent's reading of *Pinholster*. Further, the court finds that the police report has at least some relevance to the § 2244(b)(2)(B)(ii) actual innocence inquiry and that Ansaldi's affidavit is relevant to Keith's diligence under § 2244(b)(2)(B)(i). Accordingly, the court includes these exhibits in its analysis. However, as the court discusses below, the court finds that Keith's Petition fails despite this evidence.

**D.     Habeas Petition**

1.  Grounds for Relief

Keith's Petition raises two grounds for habeas relief based on alleged *Brady* violations. In the First Ground for Relief, Keith asserts that the state failed to disclose critical impeachment evidence from Yezzo's personnel file showing that she was biased in favor of law enforcement, routinely "stretch[ed] the truth to satisfy a [police] department," frequently used racial slurs against African Americans, and had a history of verbally and physically abusing co-workers. (Pet. at PageID #20, ECF No. 1.) Keith maintains that the state knew about these problems with Yezzo's work "long before she testified at Keith's trial." (Traverse at PageID #10923, ECF No. 28.) Yet the state failed to disclose them, and Keith only learned of them in 2016, when a newspaper article highlighted issues regarding Yezzo's reliability. The Second Ground for Relief stems from the state's failure to comply with Keith's trial subpoena requesting "all records, including radio dispatch logs, of all call-ins" that the Bucyrus police department received around the time of the murders. (Pet. at PageID #17, ECF No. 1.) When Keith finally obtained these records in 2016, after Ohio changed its

public records laws, he learned that the subpoena had been marked "Ignore For Now." (*Id.*) Not only do the logs provide important evidence impeaching the credibility of the state's star witness, Keith argues, they also bolster his claim that the police acted in bad faith throughout the investigation.

### 2. Report and Recommendation

The Magistrate Judge concluded that Keith's Petition should be dismissed because Keith failed to satisfy the threshold inquiry under § 2244(b)(1)(B). At the first prong, the R & R found that Keith satisfied § 2244(b)(1)(B)(i)'s diligence requirement as to the evidence in Yezzo's personnel file but not as to the police logs and the "Ignore For Now" subpoena. (R & R at PageID #11537–42, ECF No. 56.) Having concluded that Keith did not diligently pursue the phone logs, the Magistrate Judge excluded that evidence from the § 2244(b)(1)(B)(ii) inquiry. As for the Yezzo material, the R & R determined that it failed to clearly and convincingly establish Keith's innocence when viewed against the record as a whole. (*Id.* at PageID #11542–60.) And because the Magistrate Judge determined that Keith's new evidence did not present any credibility issues requiring further exploration, the Magistrate Judge found no need for an evidentiary hearing.

### 3. Objections

Keith filed a timely Objection to the R & R raising the following issues:

> I. The Magistrate Judge incorrectly determined that the Yezzo evidence does not satisfy the 2244(b)(2)(B)(ii) standard.
>
> II. The Magistrate Judge conducted the 2244(b)(2)(B)(ii) assessment incorrectly.
>
> III. The Magistrate Judge incorrectly found that Keith did not meet the diligence prong with regard to the subpoena with the words "Ignore for Now" written on it.
>
> IV. The Magistrate Judge erred in issuing his final ruling in this case before this Court ruled on Keith's pending objections to the Magistrate Judge's denial of portions of Keith's Motion to Expand the Record.

V.      The Magistrate Judge incorrectly denied Keith an evidentiary
        hearing.

(Keith's Obj. to R & R at PageID#11568, ECF No. 58.) The second objection is well-taken. The

court agrees with Keith that the phrase "evidence as a whole" in § 2244(b)(2)(B)(ii) requires habeas

courts to consider "all the evidence, including that alleged to have been illegally admitted and the

evidence tenably claimed to have been wrongly excluded or to have become available only after the

trial." (*Id.* at PageID #11478.) The R & R's analysis, which considered only "the body of evidence

presented at trial" plus the Yezzo evidence, therefore was too narrow. (R & R at PageID #11542,

ECF No. 56.) However, correcting this error does not change the outcome because, as the court

discusses in detail below, Keith fails to satisfy § 2244(b)(2)(B)(ii) even under the more expansive

view of the "evidence as a whole." As for the other objections, the court disagrees with Keith and

therefore overrules them.

Although Respondent did not file a separate objection, she makes the following argument

in her Response to Keith's Objection:

> As the prevailing party, the Warden need not separately object to [the
> Magistrate Judge's] adverse finding as to the diligence issue (*See
> Vanwinkle* [*v. United States*, 645 F.3d 365, 371 (6th Cir. 2011)]), and
> implores the Court to find Keith was not diligent in procuring and
> presenting the Yezzo documents after reviewing the issue de novo
> pursuant to Keith's objections.

(Resp.'s Opp'n to Keith's Obj. to R & R at PageID #11738 n.2, ECF No. 60.) This argument is not

well-taken. The Magistrate Judge correctly concluded that Keith met the diligence prong as to the

Yezzo evidence.

4.  Analysis

Despite sustaining one of Keith's objections, the court ultimately agrees with the R & R's

recommendation to dismiss Keith's Petition. The court briefly discusses each prong of the

§ 2244(b)(2)(B) analysis in turn.

>   *i. Diligence*

The court agrees with the R & R's assessment that Keith was diligent with respect to the

Yezzo evidence. As the Magistrate Judge explains:

> [P]ortions of the personnel file to which Petitioner now points were in
> existence at the time of trial. But the undersigned disagrees that Petitioner
> can be faulted for failing to uncover it sooner. Could Petitioner have
> requested Yezzo's police file at the time of trial? Yes. But, when the
> prosecution represented to him that it would provide favorable material,
> and the personnel file was never mentioned or revealed . . . a reasonable
> individual would not have believed it necessary to do so.

(R & R at PageID #11539, ECF No. 56.) Respondent argues that the Magistrate Judge mistakenly

applied a subjective standard to evaluate Keith's diligence instead of the objective standard used in

the Fifth Circuit. (Resp.'s Opp'n to Keith's Obj. to R & R at PageID #11739–41, ECF No. 60.) But

this criticism is unfounded. While the Magistrate Judge did consider Keith's subjective actions, the

R & R explicitly states that "even under the Fifth Circuit's objective diligence standard, advanced

by Respondent . . . , the undersigned would reach the same conclusion." (R & R at PageID #11540

n.2, ECF No. 56.) This court agrees. By any metric, a reasonably diligent individual in Keith's

circumstances would not expect or anticipate that the state's forensic analyst would have such

damning information in her personnel file, let alone that the state would allow her to testify under

such circumstances. Nor would a reasonably diligent individual, after receiving assurances that the

state would turn over all favorable material, suspect that the state would fail its constitutional

obligation to turn over such obvious impeachment information.

However, Keith was not diligent with respect to the police call logs. The Magistrate Judge

correctly found that Keith "did not do as much as could reasonably be expected from someone in his

circumstances." (*Id.* at PageID #11541 (quotation omitted).) Keith issued the subpoena two days into

trial to obtain information to rebut one of the state's witnesses. Specifically, Keith demanded that the Bucyrus police department turn over "all records, including radio dispatch logs, of all call-ins from February 12, 1994 to the present time." (Subpoena, ECF No. 1-29.) But while it is undisputed that Keith never received a response, the record also shows that Keith never

> (1) brought the lack of response to the trial court's attention; (2) questioned any Bucyrus Police Department witness regarding whether they brought such records to trial; or (3) made any attempt to follow up on the lack of response at trial or during his initial appeal.

(R & R at PageID #11541, ECF No. 56.) From this, the Magistrate Judge concluded that Keith failed to satisfy the requirements under § 2244(b)(2)(B)(i) relative to the call logs because "[a] reasonably diligent individual would have, at a minimum, followed up on the lack of response at the time of trial, or at least sometime earlier than Petitioner here did." (*Id.*) That conclusion is correct.

Keith's Objection on this issue is not persuasive. He argues that the Magistrate Judge unreasonably faults him "for not predicting that the State deliberately, in bad faith, refused to comply with discovery at the time of his trial," and that

> [e]ven assuming that the Bucyrus Police Department would have produced the station's phone recordings in response, Keith had no way of discovering the police's deliberate bad faith in ignoring the subpoena. This bad faith is relevant to the State's overall conduct in prosecuting Keith and could have persuaded a jury with respect to other aspects of the State's case against Keith.

(*Id.* at PageID #11614.) Tellingly, this argument does not address Keith's lack of diligence. To the contrary, by pivoting away from "the police department's non-compliance with the subpoena" and focusing instead on speculation regarding "the intentional and blatant police misconduct," Keith seems to concede that he did not act diligently with respect to his subpoena. Regardless of whether the police would have disclosed the "Ignore For Now" notation or continued to suppress it, the fact remains that a reasonably diligent individual in Keith's position would have followed up at trial to

enforce the subpoena. Consequently, Keith fails to show that this evidence "could not have been discovered previously through the exercise of due diligence."[5] 28 U.S.C. § 2244(b)(2)(B)(i).

#### ii. Actual Innocence

In this circuit,[6] "the 'evidence as a whole' is exactly that: all the evidence put before the court at the time of its § 2244(b)(2)(B)(ii) or § 2255(h)(1) evaluation." *Clark v. Warden*, 934 F.3d 483, 496 n.5 (6th Cir. 2019) (quoting *United States v. MacDonald*, 641 F.3d 596, 610 (4th Cir. 2011)). This includes "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under [evidentiary rules]," *Long v. Hooks*, 972 F.3d 442, 470 (4th Cir. 2020) (quoting *MacDonald*, 641 F.3d at 612), as well as evidence presented in support of prior habeas petitions, *In re Keith*, 2018 WL 8807240, at *3 (considering "evidence presented in Keith's 2008 habeas petition" for purposes of the *prima facie* § 2244(b)(2)(B) analysis).

Keith objects that the Magistrate Judge applied a narrower conception of the "evidence as a whole" when preparing the R & R. This objection is well-taken. But as the court explains below, even after correcting the Magistrate Judge's error and accounting for the additional evidence Keith cites, the outcome remains the same: dismissal is required because Keith fails to establish his actual innocence by clear and convincing evidence.

In the R & R, the Magistrate Judge

> summarize[d] the trial evidence, detail[ed] the "newly discovered

---

[5]     Regardless, Keith's Petition would fail even if the court found that he acted diligently with respect to the call logs and the police department's alleged bad faith. Including this evidence as part of the "evidence as a whole," Keith still cannot satisfy § 2244(b)(2)(B)(ii).

[6]     The Fourth and Tenth Circuits split on this issue. *Compare United States v. MacDonald*, 641 F.3d 596, 614 (4th Cir. 2011), *with Case v. Hatch*, 731 F.3d 1015, 1038 n. 12 (10th Cir. 2013). The Sixth Circuit subsequently aligned with the Fourth Circuit. *See Clark v. Warden*, 934 F.3d 483, 496 n.5 (6th Cir. 2019).

evidence" that satisfies § 2244(b)(2)(B)(i) as set forth above, and then analyze[d] the likely impact this new evidence would have on reasonable jurors in light of the evidence presented at trial.

(R & R at PageID #11543, ECF No. 56.) In other words, the R & R considered the evidence introduced at trial—both the prosecution and defense cases—plus the Yezzo material. As the R & R explained, the Sixth Circuit previously summarized that

> [t]he core of the case . . . against Keith included:
>
> • Eyewitness testimony of the survivor [Richard] Warren [("Warren")] identifying Keith;
>
> • A partial imprint of the license plate made from the snowbank where the getaway car crashed matched the license plate of a car he was known to have access to;
>
> • Eyewitness identification of him as the man driving the getaway car when it crashed;
>
> • A spent bullet cartridge casing matching the ones recovered from the scene of the murders was found where Keith later picked up his girlfriend; and
>
> • Testimony that Keith had been indicted as a result of the drug raid precipitated by the victims' relative[, a police informant named Rudel Chatman ("Chatman")].

*Keith*, 551 F.3d at 558. Because Yezzo testified regarding the license plate imprint and other factors linking Keith to the getaway car, her testimony touched the core of the state's case. The R & R therefore correctly acknowledged that

> [t]he evidence presented regarding Yezzo's personnel file certainly weakens some of the "core" of the State's case, and use of that information on cross-examination to impeach Yezzo might have caused a reasonable jury to discount her testimony to a degree.

(R & R at PageID #11560, ECF No. 56.) But the R & R went on to explain that impeachment evidence rarely demonstrates actual innocence. (*Id.* at PageID #11558 (citing *In re Byrd*, 269 F.3d 561, 577 (6th Cir. 2001)).) And citing evidence from Warren and other eyewitnesses linking Keith

-15-

to the crime scene, the Magistrate Judge concluded that Yezzo's testimony "was not the so-called 'smoking gun' in this case, but one additional piece of evidence." (*Id.* at PageID #11557.) Accordingly, the R & R found that, applying the clear and convincing evidence standard, "reasonable, properly instructed jurors who heard the evidence presented at trial, and the newly discovered impeachment evidence from Yezzo's personnel file, would still have convicted Petitioner." (*Id.* at PageID #11560.)

In his Objection, Keith urges the court to redo the § 2244(b)(2)(B)(ii) analysis with a much broader lens, including the following factors in particular:

- Evidence impeaching the credibility of Warren, who was the state's star witness. This evidence includes (i) handwritten notes from Warren's hospital stay after the shooting, which contradict testimony at trial suggesting that Warren told his nurse that "Kevin" shot him; (ii) the police call logs, which contradict the nurse's testimony that he promptly called the police to report "Kevin" as the shooter; and (iii) notes from a hospital security guard, which suggest that the shooter remained unidentified. (Keith's Obj. to R & R at PageID #11580–86, ECF No. 58.)

- Evidence suggesting that another individual, Rodney Melton ("Melton"), committed the murders and that police conducted a shoddy investigation because they doggedly focused on Keith from the start. This evidence includes (i) statements from Melton demonstrating that he had a similar motive as Keith; (ii) eyewitness and physical evidence linking Melton to the crime scene; (iii) statements from Melton expressing that he intended to kill Chatman; and (iv) evidence that police knew this information before Keith's trial but failed to disclose it. (*Id.* at PageID #11593–95, 11605–08.)

- Post-conviction expert reports that undermine Yezzo's findings and raise serious questions regarding her biases and temperament. (*Id.* at PageID #11601–04.)

- Evidence corroborating the alibi Keith presented at trial. (*Id.* at PageID #11610–11.)

- The "Ignore For Now" subpoena, which, in combination with other evidence, demonstrates "intentional and blatant police

> misconduct" that taints the police investigation and undermines
> the credibility of the state's case. (*Id.* at PageID #11615.)

With this view of "the evidence as a whole," Keith asserts, no reasonable juror could have found him guilty beyond a reasonable doubt.

While the court agrees with Keith that this evidence is relevant to the § 2244(b)(2)(B)(ii) analysis, the court ultimately concludes that it is not enough to show by clear and convincing evidence that he is actually innocent. Throughout his trial and post-conviction proceedings, including this fourth-in-time Petition, Keith has attempted to cast doubt on the police investigation and "strongly pursued the defense that another man committed the killings, specifically Rodney Melton." *State v. Keith*, No. 3-17-01, 2017 WL 2729625, at *10 n. 9 (Ohio Ct. App. June 26, 2017). But the jury saw evidence and heard extensive testimony regarding these defenses. Indeed, Melton himself testified at trial, where the jury learned, among other things, that he had a prior murder conviction—*i.e.* the murder discussed in the Mansfield police report that Keith included with his Second Motion to Expand the Record. Keith's attorney vigorously cross-examined Melton, exposing his checkered past, his potential motive, and the physical evidence linking him to the crime scene. Defense counsel also thoroughly examined Warren, Smathers, and other key witnesses. As a result, the jury heard about Keith's alibi and discrepancies in Warren and Smather's testimony identifying Keith as the shooter. Yet the jury still voted to convict. As for the new expert reports, Keith's forensic expert actually *agreed* with some of Yezzo's key findings—most importantly that the first two digits from the license plate impression read "04" and that the tire tracks at the scene were consistent with tread from a Firestone Triumph 2000 tire. (*See* Bodziak Rep. at PageID #188–92, ECF No. 1-24.) Finally, while the evidence Keith marshals regarding bad faith and police misconduct certainly is troubling, it does not dictate the conclusion that Keith seeks. As with the other issues Keith emphasizes in his Petition, defense counsel challenged the police investigation

and forcefully made the case at trial that the investigators ignored other leads once they set their sights on Keith. In short, Keith's Petition effectively reiterates the same arguments that he made at trial and that he has continued to pursue since. And while the new evidence potentially strengthens Keith's case against Melton and potentially impeaches the credibility of the state's eyewitnesses, it crucially does not show that Keith is innocent. As the Magistrate Judge correctly concluded, "new impeachment evidence does not of itself provide proof of actual innocence." *In re Whittaker*, No. 17-2135, 2018 U.S. App. LEXIS 4804, at *3 (6th Cir. Feb. 26, 2018) (citing *In re Byrd*, 269 F.3d at 577). Likewise, pointing a finger at Melton does not erode the evidence against Keith. Consequently, in light of the evidence as a whole, including all of the evidence Keith cites in his Petition and Objection, the court concludes that a reasonable, properly instructed juror could have convicted Keith.

In reaching this conclusion, the court feels compelled to emphasize that its "function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House v. Bell*, 547 U.S. 518, 538 (2006). Thus, it does not matter one whit whether the court's independent analysis of the evidence as a whole would lead it to conclude that it had reasonable doubts about Keith's guilt. The bar for overturning a jury verdict in federal habeas proceedings is set deliberately high. And unlike cases in which new evidence conclusively establishes the petitioner's innocence—for example, where the state's star witnesses recants their testimony, *see, e.g.*, *Crosland v. Pennsylvania*, No. 21-CV-476, slip op. at 1–2 (E.D. Pa. June 22, 2021), or where new physical evidence exonerates the petitioner—Keith presents nothing to suggest that the two key eyewitnesses ever recanted their testimony, that there is new physical evidence exonerating him, or that there is conclusive evidence implicating Melton.

This case, more than most, demonstrates the tragic result of subjecting *Brady* claims to

§ 2244(b)'s gatekeeping requirements. *Brady* claims usually involve impeachment evidence. Yet evidence that merely impeaches is almost never sufficient to establish actual innocence. As a result, subjecting *Brady* claims to § 2244(b) often forecloses the possibility of meaningful habeas review on the merits. Other courts have expressed alarm at the predicament this poses for habeas petitioners and dismay for the perverse incentives it creates for state actors to conceal past *Brady* violations until after the petitioner files their initial petition. *See Long*, 972 F.3d at 487 (4th Cir. 2020) (Wynn, J., concurring) ("*Brady* claims, as a category, represent a good candidate for exclusion from the 'second or successive' requirements."); *Scott v. United States*, 890 F.3d 1239, 1243 (11th Cir. 2018) ("[The rule subjecting *Brady* claims to § 2244(b)] eliminates the sole fair opportunity for these petitioners to obtain relief. In our view, Supreme Court precedent, the nature of the right at stake here (the right to a fundamentally fair trial), and the Suspension Clause of the U.S. Constitution, Art. I, § 9, cl. 2, do not allow this. Instead, they require the conclusion that a second-in-time collateral claim based on a newly revealed actionable *Brady* violation is not second-or-successive for purposes of AEDPA."); *Gage v. Chappell*, 793 F.3d 1159, 1165 (9th Cir. 2015) ("[Petitioner's] argument for exempting his *Brady* claim from the § 2244(b)(2) requirements has some merit. Under our precedents as they currently stand, prosecutors may have an incentive to refrain from disclosing *Brady* violations related to prisoners who have not yet sought collateral review. . . . But as a three-judge panel, we are bound to follow the teaching of prior circuit precedent].") Like those courts, this court also must apply the law as it exists, not as the court wishes it to be. Accordingly, for the reasons discussed above, the court must dismiss Keith's Petition because it cannot clear the hurdle erected by § 2244(b)(2)(B)(ii).

### E.      Motion for Oral Argument

Most recently, Keith filed a Motion for Oral Argument on his Petition. (ECF No. 65.)

Relatedly, he previously sought an evidentiary hearing before the Magistrate Judge and objected when the Magistrate Judge declined to hold one. (*See* Keith's Obj. to R & R at PageID #11619, ECF No. 58.) But the Magistrate Judge correctly concluded that an evidentiary hearing was not needed before issuing the R & R, and this court similarly finds that no hearing is needed before dismissing Keith's Petition. Taking Keith's evidence at face value and in the best light, his Petition still fails to satisfy the requirements of § 2244(b)(2)(B)(ii). Consequently, there are no issues that require further exploration, and a hearing would not aid the court.

### III.  CONCLUSION

After a careful *de novo* review of the R & R, the parties' arguments, Keith's Objection to the R & R, and all relevant materials in the record, the court adopts the Magistrate Judge's R & R (ECF No. 56), as modified by this Order and hereby dismisses the Petition. The court also overrules the parties' Objections regarding the Magistrate Judge's partial expansion of the record, grants Keith's Second Motion to Expand the Record (ECF No. 59) and denies his Motion for Oral Argument (ECF No. 65).

Finally, the court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could be taken in good faith, and the court hereby issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b).

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

September 24, 2021